427 So.2d 288 (1983)
Robustiano PUGA and Medmold, Inc., Appellants,
v.
SUAVE SHOE CORPORATION, Appellee.
No. 81-187.
District Court of Appeal of Florida, Third District.
February 22, 1983.
*289 Fine Jacobson Block, Klein Colan & Simon and Joseph H. Serota and Irwin J. Block, Miami, for appellants.
Greenberg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff and David L. Ross and Ronald B. Ravikoff, Miami, for appellee.
Before BARKDULL, FERGUSON and JORGENSON, JJ.
BARKDULL, Judge.
Following the opinions and decisions of this court reported in Puga v. Suave Shoe Corporation, 374 So.2d 552 (Fla. 3d DCA 1979) and Suave Shoe Corporation v. Fernandez, 390 So.2d 799 (Fla. 3d DCA 1980), the matter was presented to a jury on Suave's claim for tortious interference with a business relationship. This resulted in a verdict adverse to the appellants for compensatory and punitive damages. This appeal ensued.
The appellants contended that they were entitled to a directed verdict because the evidence was speculative and that the evidence failed to demonstrate that the appellant's activities were the proximate cause of any loss. We disagree and affirm.
The plaintiff's evidence clearly established that at great expense they established within their shoe manufacturing concern an in-house "mold shop". This permitted them to make their products without contracting for mold services with third parties. The shop was established by the plaintiff going to Europe and acquiring an expert craftsman and then through him developing a mold shop which ultimately employed from twelve to fifteen people with a capacity to service the plaintiff's business. The nature of the mold shop was such that the principal employees were required to execute noncompetitive agreements which were the subject matters of the earlier cases.
The processes and methods of operation were secretive; there were only five or six such facilities in the entire world. The individual appellant after having a disagreement with Suave left its employment and set upon a designated course to take the entire mold shop from Suave and move it to a corporation he formed, to wit, the corporate appellant. As a result of this activity, the principal craftsmen and the entire mold shop after receiving their Christmas bonuses departed Suave and set up operation for the appellant corporation. Suave was then required to start over and reestablish its mold shop. There was more than ample competent, sufficient evidence to show that Suave was required to pay substantially more than it recovered in reestablishing the mold shop, plus the additional losses as profits on contracts already entered into that they were unable to complete because of the tortious interference of the appellants. Insurance Field Services, Inc. v. White & White Inspection and Audit Service, Inc., 384 So.2d 303 (Fla. 5th DCA 1981); Adams v. Dreyfus Interstate Development Corporation, 352 So.2d 76 (Fla. 4th DCA 1977); Conner v. Atlas Aircraft Corporation, 310 So.2d 352 (Fla. 3d DCA 1975); American Republic Insurance Company v. Union Fidelity Life Insurance Company, 470 F.2d 820 (9th Cir.1972).
*290 As to the award of punitive damages, the individual appellant contends that the jury should not have been permitted to consider assets held in an estate by the entireties. We do not agree. This is but evidence of the net worth of the individual appellant. Tennant v. Charlton, 377 So.2d 1169 (Fla. 1979); Donahue v. Hebert, 355 So.2d 1264 (Fla. 4th DCA 1978).
Therefore the final judgment here under review is hereby affirmed.
Affirmed.